[Cite as *State v. Welch*, 2014-Ohio-3349.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY   COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 25921 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 2012-CR-3396/2 |
| v. | : | |
| | : | |
| STEVEN WELCH | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 1st day of August, 2014.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by APRIL F. CAMPBELL, Atty. Reg. #0089541, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45402
        Attorney for Plaintiff-Appellee

DANIEL A. PERRY, Atty. Reg. #0087548123 Boggs Lane, Cincinnati, Ohio 45246
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HALL, J.

{¶ 1}    Steven Welch appeals his convictions for obstructing justice and tampering with evidence for helping his son bury a safe that his son had stolen. We affirm.

**I. FACTS**

{¶ 2}    At Welch's jury trial, the state presented the testimony of two Dayton police

officers who were involved in the case. Officer Jeffrey Vance testified that, in the early morning hours one day in September 2012, he was dispatched to a Dayton home on a burglary call. The homeowner told Officer Vance that she had returned home around 4 a.m. and discovered that a safe containing, among other valuables, about $18,000 in cash was missing. Officer Vance was told that Christopher Welch was a probable suspect. Christopher lived nearby with his father, Steven Welch. So Vance went to Welch's house, where he spoke with Steven. Officer Vance told him that his son was suspected of burglarizing a nearby house and stealing a safe and that Vance was looking for both his son and the safe. Welch told the officer that "he was already aware of that." (Tr. 72). Welch said that someone had been by his house earlier and told him and that he had been out looking for his son without success. Officer Vance gave Welch Detective Jason Neubauer's business card and told Welch that his son should contact the detective as soon as possible.

{¶ 3} Detective Neubauer testified that he interviewed Welch's son at the police department where the son admitted that the safe was buried in the backyard of his father's house. The detective then took him to the house. While Welch was signing a form that gave his consent to search his property, Detective Neubauer asked him about his involvement in the matter. It was then that Welch admitted that "he had helped his son help bury the safe * * * in order to protect his son * * *." (Tr. 84). Welch's son dug up the safe, but they had buried the safe's door in another spot. He was having difficulty finding it until Welch told him where to dig. Later, Detective Neubauer interviewed Welch at the police department. Welch again admitted that he had helped bury the safe because he wanted to protect his son. Welch told the detective that "after Christopher had informed him that the safe was in the backyard, he instructed Christopher to wait

until it got dark, at which point after nightfall Christopher got a shovel and began digging. He said once Christopher got tired of digging, he actually helped him and started digging himself. And that was merely when asked why he did that, it was in case anybody was snooping around they wouldn't be able to see it." (Tr. 93). Welch indicated to Detective Neubauer that he was aware that there had been a burglary in which a safe was stolen.

{¶ 4}  After presenting the testimony of the two police officers, the state rested its case. Welch moved for acquittal under Crim.R. 29, and the trial court denied the motion. Welch then presented the testimony of his son, Christopher. Christopher testified that he buried the safe alone, that his father did not help him, and that his father did not even know about the buried safe. When the defense rested, the state presented rebuttal testimony from Detective Neubauer. The detective testified that, during an interview, Christopher told police that his father had helped him bury the safe.

{¶ 5}  The jury found Welch guilty. He was convicted, receiving a sentence of community control.

{¶ 6}  Welch appealed.

## II. ANALYSIS

{¶ 7}  Welch assigns two errors to the trial court. The first alleges that the trial court erred by not granting Welch's Crim.R. 29 motion for acquittal. And the second alleges that Welch's convictions are against the manifest weight of the evidence.

{¶ 8}  Crim.R. 29 provides that a trial court must enter a judgment of acquittal "if the evidence is insufficient to sustain a conviction of such offense or offenses." Crim.R. 29(A). "When reviewing the sufficiency of evidence, the relevant inquiry is whether any rational finder

of fact, viewing the evidence in a light most favorable to the state, could have found the essential elements of the crime proven beyond a reasonable doubt. A guilty verdict will not be disturbed on appeal unless 'reasonable minds could not reach the conclusion reached by the trier-of-fact.'" (Citation omitted.) *State v. Knight*, 2d Dist. Greene No. 2003CA14, 2004-Ohio-1941, ¶ 15, quoting *State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997).

**{¶ 9}** Although the state does not raise the issue, we note that Welch did not renew his Crim.R. 29 motion for acquittal at the close of all the evidence in his jury trial. "An accused waives his or her right to a directed verdict of acquittal at the close of the state's case by thereafter introducing evidence and then failing to renew the motion at the close of all the evidence." (Citation omitted.) *State v. Butler*, 10th Dist. Franklin No. 98AP-55, 1998 WL 733762, *4 (Oct. 22, 1998), citing *Dayton v. Rogers*, 60 Ohio St.2d 162, 163, 398 N.E.2d 781 (1979). Here, Welch moved for acquittal at the close of the state's case-in-chief, the trial court denied the motion, and Welch then presented the testimony of his witness. After resting, Welch did not renew the motion. The state then presented the testimony of a rebuttal witness. After the rebuttal testimony, Welch again did not renew the motion. Welch has therefore waived any challenge to the trial court's overruling of his motion for acquittal. *Compare State v. Wright*, 9th Dist. Lorain No. CIV.A. 04CA008490, 2004-Ohio-7162, ¶ 4 (concluding the same on the same facts, *mutatis mutandis*). Consequently, we will reverse only if the trial court's action "rises to the level of 'plain error.'" (Citation omitted.) *State v. Engle*, 2d Dist. Montgomery No. 15293, 1997 WL 205994, *2 (Apr. 25, 1997) (finding that the defendant waived any error in overruling his Crim.R. 29 motion for acquittal at the close of the state's case because he failed to renew the motion at the close of all the evidence in his jury trial), citing *Dayton*. "In order to find plain

error, this court must be convinced that, but for the error the outcome of the proceeding would clearly have been different." (Citation omitted.) *Id*. The key issue with respect to the first assignment of error, then, is whether the trial court clearly would have granted the motion for acquittal had Welch renewed it at the close of all the evidence. *See id.*

{¶ 10} Our review is different with respect to Welch's manifest-weight challenge. In that regard, we review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983). "Because the trier of fact sees and hears the witnesses and is particularly competent to decide 'whether, and to what extent, to credit the testimony of particular witnesses,' we must afford substantial deference to its determinations of credibility." *State v. Gabriel*, 170 Ohio App.3d 393, 2007-Ohio-794, 867 N.E.2d 474, ¶ 78 (2d Dist.), *rev'd on other grounds sub nom*, *In re Ohio Criminal Sentencing Cases*, 116 Ohio St. 3d 31, 2007-Ohio-5551, 876 N.E.2d 528, quoting *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684 (Aug. 22, 1997). A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175.

{¶ 11} Welch argues that the evidence does not show that he obstructed justice–specifically, does not show that he helped bury the safe "with purpose to hinder the discovery, apprehension, prosecution, conviction, or punishment," R.C. 2921.32(A), of his son–or that he tampered with evidence–specifically, does not show that he helped bury the safe

"knowing that an official proceeding or investigation [wa]s in progress, or [wa]s about to be or likely to be instituted," R.C. 2921.12(A). Welch contends that the state failed to prove that he knew about a criminal investigation and acted with a purpose to hinder the prosecution of his son's crime. Welch points out that there is no evidence corroborating his confession and that no recording or signed statement of his confession was presented. He also points out that no physical evidence was presented that shows he helped bury the safe.

{¶ 12} Welch cites no authority for the proposition that a confession must be corroborated or memorialized.[1] Nor does he cite authority for the necessity of physical evidence in this case. The jury's verdict reflects that it found the testimony of the state's witnesses credible–more credible than that of the defense's witness. "A jury does not lose its way simply because it chooses to believe the state's witness over the defendant." (Citation omitted.) *State v. Davis*, 193 Ohio App.3d 130, 2011-Ohio-1280, 951 N.E.2d 138, ¶ 45 (2d Dist.). Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found proven beyond a reasonable doubt that Welch's purpose in helping to bury the safe was to hinder the discovery, apprehension, prosecution, conviction, or punishment of his son and that, when he helped bury the safe, Welch knew that it was stolen and that there would be an investigation. Therefore, the trial court would not have granted Welch's motion for acquittal had he renewed it at the close of all the evidence. Welch's admissions to police both are sufficient to support his convictions and render his convictions consistent with the manifest weight of the evidence.

---

[1] Appellant's argument about the lack of corroboration of the confession challenges the believability of whether the confession occurred, that is whether the occurrence of the confession is against the manifest weight of the evidence. What appellant does not argue, and what we do not address, is the corpus delicti rule, which requires "some evidence" to establish an offense before a confession is admissible. *State v. Edwards*, 49 Ohio St.2d 31, 358 N.E.2d 1051 (1976), overruled on other grounds, 438 U.S. 911, 98 S.Ct. 3147, 57 L.Ed.2d 1155 (1978).

*Compare Gabriel*, 170 Ohio App.3d 393, 2007-Ohio-794, 867 N.E.2d 474, at ¶ 78 (concluding that the defendant's admissions to police were sufficient to support his conviction for tampering with evidence and the conviction was not against the weight of the evidence).

{¶ **13**}   The two assignments of error are overruled.

{¶ **14**}   The trial court's judgment is affirmed.

. . . . . . . . . . . . .

DONOVAN and WELBAUM, JJ., concur.

Copies mailed to:

Mathias H. Heck
April F. Campbell
Daniel A. Perry
Hon. Gregory F. Singer